**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CLARENCE STANFORD, JR.,

                            Plaintiff,

       v.

N.Y.S. OFFICE OF CHILDREN AND
FAMILY SERVICES; JOHN ROCKEFELLOW,
Tour 3 Supervisor; NURSE GAGNON;
NURSE ROOT; GARY PATTMAN,
Director of Brookwood,

                            Defendants.

1:17-CV-1000
(MAD/CFH)

---

**APPEARANCES:**                           **OF COUNSEL:**

Clarence Stanford, Jr.
835 Emmett Street, 2nd Floor
Schenectady, New York 12307
Plaintiff <u>pro se</u>

### REPORT-RECOMMENDATION AND ORDER[1]

### I.  In Forma Pauperis

       Plaintiff commenced this action on September 8, 2017 with the filing of a

complaint.  Dkt. No. 1 ("Compl.").  In lieu of paying this Court's filing fee, plaintiff filed a

motion to proceed in forma pauperis ("IFP").  Dkt. No. 2.  Presently pending before the

Court is plaintiff's application to proceed IFP and plaintiff's motion for appointment of

counsel.  Dkt. Nos. 2, 3.  Upon review of plaintiff's IFP application, the undersigned

---

    [1]  This matter was referred to the undersigned for Report-Recommendation and Order pursuant
to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

concludes that plaintiff financially qualifies to proceed IFP.[2]  See Dkt. No. 2.

## II.  Initial Review

### A.  Standard of Review

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that  . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.  Upon review of plaintiff's IFP application, Dkt. No. 2, the undersigned concludes that the plaintiff financially qualifies to proceed with this matter IFP from this point forward.[3]

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest."  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).  However, this does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims.  Although detailed allegations are not required at the pleading stage, the complaint must still

---

[2]    Plaintiff is advised that, although her IFP application has been granted, he will still be required to pay fees that he may incur in this action, including copying fees and witness fees.

[3]    Plaintiff is advised that, although he has been granted IFP status, he may still be required to pay any copying and/or witness fees that he may incur in this action.

include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

## B. Plaintiff's Claims

Plaintiff appears to brings this action against his employer, N.Y.S. Office of Children and Family Services ("OCFS") and various OCFS staff members for violations of the ADA. Dkt. No. 1-2 at 1. Although not explicitly stated in the complaint, it is possible that plaintiff also seeks to allege a claim under the New York State Human Rights Law ("NYSHRL").[4]  Plaintiff alleges that defendants (1) failed to accommodate his disability; and (2) retaliated against him, apparently for seeking a reasonable accommodation and fling a complaint with the New York State Department of Human Rights. Compl. at 9. He requests damages in the form of back pay and an amount of $2,000,000 "[f]or pain & suffering[,] mental anguish and causing more health problems because of the stress induced." Id. at 10.

Rather than list causes of action or provide a factual background in numbered paragraphs, plaintiff sets forth his allegations in an "time line" attached to the complaint, as well as various other exhibits. Compl. at 6. The time line includes events that occurred on October 29, October 31, November 2, November 3, November 7,

---

[4]  Plaintiff does not specifically cite the New York State Human Rights Law in his complaint.

November 14, and November 23, but does not specify a year.  Id. at 6-8.   However,

reading the time line in its entirety, together with attachments to the complaint,

demonstrates that these incidents occurred in 2016.  Id. at 6.  From plaintiff's time line

and appended New York State Division of Human Rights complaint, the Court can

glean that plaintiff was an employee of defendant New York State Office of Children

and Family Services ("OCFS") and requested a "reasonable accommodation" relating to

his diabetes and diabetic symptoms at the workplace.  Compl at 6.   Plaintiff asked to

be "relieved from his duties in order to evaluate and treat his symptoms of low blood

sugar."  Dkt. No. 1-1 at 2.  Apparently, plaintiff requested relief in order to eat because

he was "feeling shaky."  Dkt. No. 1-1 at 10.

As to plaintiff's claims against Ganon and Root, plaintiff contends that he called

defendants Ganon and Root three times on October 29, but they hung up the phone on

him, refused to help, and told him that they were "not getting involved with agreement

with week day nursing staff.'"  Compl. at 6.  Plaintiff's complaint does not explain his

"agreement with week day nursing staff" nor does he explain what sort of help he

requested of Nurses Gagnon and Root.  Id.  However, in a form labeled, "Activity Rule

Violation - Incident Report," dated October 29, 2016 and signed by plaintiff, which

appears to be a form from the New York State Office of Children and Family Services,

plaintiff provides that there was an "agreement" in place such that "if the D.O. is busy

and there isn't any staff available the nurse will be [sic] food from my lunch bag or

provide relief."  Dkt. No. 1-1 at 17.  Apparently, defendants Root and Gagnon refused to

provide this assistance.  Id.; Compl. at 6.

4

As for defendant "D.O. Rockefellow," plaintiff contends that Rockefellow denied plaintiff the opportunity to tend to his medical needs and "did not inform Mr. Stanford when, if at all, he would be able to relieve him." Dkt. No. 2-2 at 2. After D.O. Rockefellow refused plaintiff relief, plaintiff called 911 to seek "emergency medical help." Dkt. No. 1-1 at 2. After plaintiff sought emergency assistance, it appears that Rockefellow "refuse[d] to allow YDA Stanford back to work by order of the Director. DO said Stanford needs a note from the Doctor standing YDA Stanford can return to work Fully Duty no restriction." Id. at 6; Dkt. No. 101 at 2-3. Apparently, plaintiff obtained a medical note stating he was fit to return to work, but Rockefellow told him that "your mind is not right you can't go back to work." Compl. at 7; dkt. no. 1-1 at 3, 18.

At some point, it appears that nonparty Haggerty placed plaintiff on "[a]dministrative leave with pay[,] no reason given." Compl. at 7. Plaintiff states that such administrative leave "appears to be punitive since Dr. note was in and ability to make 10k was stopped." Id. As a result of Haggerty's placing plaintiff on administrative leave, plaintiff "miss[ed] all schedule[d] OT."[5] Id. Plaintiff also indicates that he was "kep[t] from regular work schedule." Id.

Plaintiff next provides that on November 7, unspecified defendants sent a letter "describing incidents never discussed in any supervision or formal matter." Compl. at 7. Plaintiff does not describe this letter or provide it to the Court. Plaintiff suggests that the letter was "OCFS retaliation for HRC Complaint." Id. Plaintiff does not define "HRC Complaint," but, providing a liberal reading, he may mean a Human Rights complaint to

---

[5] The undersigned infers that "OT" is an abbreviation for overtime. Compl. at 7.

the New York State Department of Human Rights.  Id.  Plaintiff suggests that he then experienced retaliation by "phycological [sic] abuse from OCFS" because he was sent to "EHS" exam for the "2nd time in a year" and refers to a "3rd anniversary of 10 year falling asleep from asthma attack" and a "death certificate," which he states is "enclosed."[6]  Id.  Plaintiff does not explain the "EHS exam," the asthma attack, or the "death certificate" or how they are related to his complaint.

Plaintiff states he received a letter on November 14 from Ines Nieves, who is not a named defendant and whose position is not explained, which told plaintiff "to go through OHR."  Compl. at 10.  The Nieves letter has not been provided to the Court, and plaintiff does not explain what sort of relief he sought from Ms. Neives nor does he define "OHR."  Id.  Finally, plaintiff refers to a November 23 "[w]orkplace violence incident" which was "assigned Special Investigations from Colleen Driscoll (letter enclosed)."  Id.  This letter was not provided to the Court, and plaintiff provides no factual background regarding a "workplace violence incident."  Id.

As stated above, in this time line, plaintiff references various "enclosures" and letters, though some of these "enclosures" or letters were not provided to the Court with the complaint.[7]  The enclosures that are attached to the complaint include a letter dated

---

[6]  No "death certificate" was provided to the Court.

[7]  In the timeline, plaintiff refers to a "letter from Ines Nieves telling me to go through OHR"; a "Workplace Violence Incident assigned Special Investigations from Colleen Driscoll"; some kind of documentation that "OCFS Management refused reasonable accommodation that is approve [sic] by both parties (enclosed) and is protected by the federal government"; "certified letters describing horrible treatment to YDA Stanford sent to" - Governor Andrew Cuomo - Acting Commissioner Sheila Poole - CSEA President Danny Donohue - Brookwood Director Gary Pattman (documents enclosed)"; "Letter from Governor in response to my abuse"; "Human Rights complaint"; "Letter is signed for reception" on November 3; "pay stubs"; "A letter sent to smoke screen their treacherous behavior to YDA Stanford describing incidents never discussed in any supervision or formal matter"; "death certificate enclosed"; "a

August 19, 2016 from Katie Valley, FNP-BC, CDE, who appears to be employed with

Capital Region Diabetes and Endocrine Care.  Compl. at 2.  The letter is not addressed

to a specific person or entity.  Id.  The letter advises the reader that plaintiff must be

permitted to check his blood sugar levels at certain times throughout the day, have

regular meals and snacks, and be provided with "the time and space to check blood

glucose levels and to self-administer medication and food" along with a "schedule . . . to

accommodate this."  Id.  Also included with plaintiff's complaint is an undated complaint

to the New York State Division of Human Rights; an EEOC right to sue letter dated

June 23, 2017; records from the Columbia County Sheriff's Office, including a Freedom

of Information Law request for such paperwork; a form dated October 29, 2016 from

Columbia Memorial Hospital which  states "full duty, nonrestricting as of 8[:]15 PM

10/26/16," and the Activity Rule Violation Incident Report.  Dkt. No. 1-1 at 1-18.

### C.  Analysis

### 1.  Pleading Standards

To state a claim on which relief can be granted, a complaint must contain, inter

alia, "a short and plain statement of the claim showing that the pleader is entitled to

relief."  FED. R. CIV. P. 8(a)(2).  A complaint must plead "enough facts to state a claim to

relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570,

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

_____

note" from "CMH"; "NYS activity reports to show egregious behavior of employer to YDA Stanford (copies
enclosed)."  Compl. at 6-8.  Although some of these documents have been provided with the complaint,
many have not.

7

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not

suffice."  <u>Id.</u>  Further,

> [d]etermining whether a complaint states a plausible claim
> for relief . . . requires the . . . court to draw on its judicial
> experience and common sense. . . . [W]here the
> well-pleaded facts do not permit the court to infer more than
> the mere possibility of misconduct, the complaint has
> alleged — but it has not 'show[n]' — that the pleader is
> entitled to relief.

<u>Iqbal</u>, 556 U.S. at 679 (internal citation omitted); FED. R. CIV. P. 8(a)(2).


### 2.  Legal Standards

As the Second Circuit has set forth:

> [t]he ADA makes it unlawful for an employer to "discriminate
> against any individual because such individual has opposed
> any act or practice made unlawful by this chapter or because
> such individual made a charge, testified, assisted, or
> participated in any manner in an investigation, proceeding,
> or hearing under this chapter."

<u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 719 (2d Cir. 2002) (quoting 42 U.S.C. §

12203(a)).

"Discrimination in violation of the ADA includes, *inter alia*, 'not making

reasonable accommodations to the known physical or mental limitations of an

otherwise qualified individual with a disability.'"  <u>McBride v. BIC Consumer Prods. Mfg.

Co., Inc.</u>, 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12112(b)(5)(A)).  To

demonstrate that a defendant failed to provide a reasonable accommodation under the

ADA, a plaintiff must show that:

> (1) [P]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

Id. at 97 (quoting Graves v. Finch Pruyn & Co., Inc., 457 G.3d 181, 184 (2d Cir. 2006)).

Regarding plaintiff's claim for retaliation, "42 U.S.C. § 12203(a) provides that no

person shall discriminate against any individual because such individual has opposed

any act or practice made unlawful by this chapter or because such individual made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding,

or hearing under this chapter." Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010)

(internal quotation marks, brackets, and citation omitted).  To demonstrate a prima facie

case of retaliation under the ADA or the New York State Human Rights Law, a plaintiff

must demonstrate "(1) he engaged in an activity protected by the ADA; (2) the employer

was aware of this activity; (3) the employer took adverse employment action against

him; and (4) a causal connection exists between the alleged adverse action and the

protected activity." Treglia, 313 F.3d at 719 (citing Cifra v. G.E. Co., 252 F.3d 205, 216

(2d Cir. 2001) (internal quotations marks omitted)).[8]


### 3. Assessment

---

[8] "A claim of disability discrimination under the New York State Human Rights Law ... is governed by the same legal standards as govern federal ADA claims." Graves, 457 F.3d at 184 n.3.

### a. Damages

Plaintiff requests that defendants "[p]ay staff for all time placed out of work.  For pain and suffeing [sic] mental anguish and causing more health problems because of the stress induced asking $2,000,000."  Compl. at 10.  Title I of the ADA, under which plaintiff's claims of disability discrimination and retaliation fall, does not authorize lawsuits against government agencies for money damages.  Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 375 (2000); Winokur v. Office of Court Admin., 190 F. Supp. 2d 444, 448 (E.D.N.Y. 2002).  Further, although compensatory damages, such as lost wages, may be recoverable under the ADA, punitive damages are not.  Barnes v. Gorman, 536 U.S. 181, 189-90 (2002).  Similarly, punitive damages are not recoverable under the New York State Human Rights Law.  Thus, insofar as plaintiff requests $2,000,000 for pain and suffering and mental anguish, such a request cannot proceed.

### b. Individual Defendants

Insofar as plaintiff seeks to bring his ADA claims against the individual defendants, Rockefellow, Ganon, Root, and Pattman, the ADA claims against them must be dismissed with prejudice, as the Second Circuit has made clear that "there is no individual liability under the retaliation provision of the ADA."  Arcuri v. Schoch, 15-CV-798 (DNH/TWD), 2015 WL 5652336, at *5 (N.D.N.Y. Sept. 24, 2015)[9] (citing

---

[9]  Unpublished cases cited within this Report-Recommendation and Order have been provided to plaintiff pro se.

Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010); Menes v. CUNY Univ. of N.Y.,

92 F. Supp. 2d 294, 306 (S.D.N.Y. 2000); Lane v. Maryhaven Ctr. of Hope, 944 F.

Supp. 158, 162-63 (E.D.N.Y. 1996) (concluding that, under the ADA, individual

defendants may not be held personally liable in their individual capacity or their

personal capacity).  Similarly, this District, along with many District Courts within this

Circuit, have held that "individual defendants may not be held personally liable for

alleged violations of Title I of the ADA." Arcuri, 2015 WL 5652336, at *5 (citing Castro

v. City of New York, 24 F. Supp. 3d 250, 259 (E.D.N.Y. 2014) (additional citations

omitted)).  Accordingly, insofar as plaintiff seeks to bring ADA claims against the

individual defendants, it is recommended that all such claims be dismissed with

prejudice.


### c. Eleventh Amendment Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States

shall not be construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State, or by Citizens or Subjects

of any Foreign State."  U.S. Const. amend. XI.  A State is immune from suits brought by

its citizens, as are officers acting on behalf of the State.  Puerto Rico Aqueduct and

Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144-47 (1993).  "The Supreme

Court has held that a claim brought under Title I of the ADA against States for monetary

damages is barred by the Eleventh Amendment." Winokur, 190 F. Supp. 2d at 448

(citing Garrett, 531 U.S. at 363).  Here, plaintiff seeks monetary damages from OCFS.

11

The Eleventh Amendment bars plaintiff from bringing a Title I ADA claim against the OCFS. Accordingly, it is recommended that plaintiff's ADA claims against OCFS be dismissed with prejudice.[10]

Plaintiff's potential claims under the NYSHRL are also barred "for two reasons." Deadwiley v. New York State Office of Children and Family Services, 97 F. Supp 3d 110, 117 (E.D.N.Y. 2015).

> First, because the Court has determined that Plaintiff's ADA claim is barred by the Eleventh Amendment, it follows that Plaintiff's NYSHRL [claim] must be dismissed as a pendant state law claim. Second, Plaintiff has not alleged any facts to suggest Defendant knowingly and intentionally waived its right to sovereign immunity. As a result, Plaintiff's NYSHRL claim is barred by the Eleventh Amendment.

Id. Accordingly, it is recommended that plaintiff's ADA and potential NYSHRL claims also be dismissed as barred by the Eleventh Amendment.

Although, in general, providing a pro se plaintiff an opportunity to amend his complaint is preferred, opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive [such that] better pleading will not cure it [and r]epleading would thus be futile." Cuoco v. Mortsugu, 222 F.3d 99 (2d Cir. 2000); Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999). Here, plaintiff cannot maintain an ADA claim against OCFS or the individual defendants and any amendments to his complaint will not change that. Accordingly, it is recommended that the dismissal be with prejudice and without opportunity to amend.

---

[10]  Although Courts have held that Title II ADA claims abrogate States' sovereign immunity, "Title II of the ADA does not cover employment discrimination claims." Henry v. New York State, 842 F. Supp. 2d 530, 550 (S.D.N.Y. 2012).

### III.  Motion for Counsel

Plaintiff seeks the appointment of counsel in this case as he indicates that he does not have the financial resources to retain an attorney.  See Dkt. No. 3.  It is well settled that "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case."  Leftridge v. Connecticut State Trooper Officer No. 1283, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted).  In Terminate Control Corp. v. Horowitz, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion.  In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance.  If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination.  Id. at 1341 (quoting Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986)); see also Leftridge, 640 F.3d at 69 (noting that a motion for appointment of counsel may be properly denied if the court "concludes that [the party's] chances of success are highly dubious.") (citations omitted)).

However, prior to evaluating a request for appointment of counsel, the plaintiff must make a threshold showing – that he is unable to obtain counsel through the private sector or public interest firms.  Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 173-74 (2d Cir. 1989) (quoting Hodge, 802 F.2d at 61).  Although plaintiff alleges that he was represented by counsel at some stage and "the lawyer lost," plaintiff does not demonstrate that he has attempted to find an attorney to represent him in this federal action.  Dkt. No. 3 at 1.  He has not provided that he has contacted not-for-profit

13

agencies in an effort to seek pro bono or low-cost counsel or that he has otherwise contacted private attorneys to represent him.  Thus, despite filling out the Motion for Appointment of Counsel form, which advises plaintiff of his duty to attempt to provide counsel on his own and provide evidence of correspondence from attorneys as evidence of his efforts, he has not met his burden.  Dkt. No. 3.

Further, as undersigned recommends dismissal of plaintiffs' complaint *without* opportunity to amend, plaintiff's request is premature.  Before counsel is assigned, it must be determined whether his claims are likely to be of substance.  <u>Terminate Control Corp.</u>, 28 F.3d at 1341.  Until the District Judge reviews this Report-Recommendation and Order and determines whether plaintiff's complaint can proceed, must be dismissed, or whether he may be accorded an opportunity to amend, plaintiff's claims cannot be determined to have merit.  Accordingly, it is recommended that plaintiff's motion for counsel be denied but that the denial be without prejudice to plaintiff filing a second motion for appointment of counsel in the future if the district judge permits an amendment of the complaint and if he otherwise demonstrates a change in his circumstances.  As indicated above, any future motion for counsel must be accompanied by evidence of the efforts that plaintiff has taken to retain counsel on his own either in the public or private sector.  Financial need, without more, does not suffice for appointment of pro bono counsel in a civil action.

### IV.  Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

14

**ORDERED**, that plaintiff's motion for In Forma Pauperis relief be **GRANTED** (Dkt. No. 2); and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be dismissed in its entirety with prejudice, and it is further

**RECOMMENDED**, that plaintiff's Motion for Appointment of Counsel (Dkt. No. 3) be denied, but the denial be without prejudice to plaintiff seeking to renew such request in the future should his complaint be permitted to proceed by the District Judge *and*, if in future applications, he demonstrates a change in his circumstances; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), the plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: October 24, 2017
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

15